Consolidated for oral argument are 2015-5077 and 2015-5101, Coastal Professional v. U.S. Is it Sneckenberg? Am I saying it right? It is Sneckenberg. Sneckenberg, please proceed. May it please the Court. Your Honors, this case involves a single legal question. Is this a Tucker Act-based protest? And the answer must be yes. The Tucker Act provides a substantive right to contractors to challenge the award of new contracts. Well, your appeal rests entirely upon us accepting that when the Department grants an award term extension, it executes a new contract, right? In this circumstance, yes, Your Honor. So I agree that technically the Department does issue a new instrument under these circumstances, but when the Department grants an award term extension, doesn't it depend upon an analysis of factors found in the underlying task order? Yes, Your Honor, to an extent. There is an analysis. But doesn't that mean that these disputes concern, since you said yes, concern a disagreement over the terms of an existing contract, that is, the original task order? No, Your Honor, it does not. This dispute concerns GRS's exercise of its substantive right provided by the Tucker Act. Does the Department derive the material terms of any award term extension from the original task order? If I understand your question correctly, Your Honor, in this case, some of the terms, if not the majority of the terms, of the new contracts may be similar to or reflect the terms of the old contract. Well, they reflect the material terms, do they not? Well, do they, for example, dictate the term of the contract, or is that open-ended under the new task order? The term of the contract is open-ended. So we have no idea. So the new task order will specify how long this new contract is going to be for, correct? Correct, Your Honor. So this H-4 doesn't dictate, unlike H-3, which is 6 months, and H-1, which is 60 months, this doesn't dictate any term. That's going to be completely decided as between the government and the new contractor, correct? Yes, Your Honor, that is entirely correct, and that is an important distinguishing point. And can I ask another question? What about pricing and terms? Doesn't this extension under H-4 give the contractor the right to not accept the government's pricing and terms under this new task order that would be issued? Correct, Your Honor. The new task order under H-4, H-4 provides some of the provisions and really the eligibility criteria characteristics, just as any ordinary solicitation would provide the characteristics for a new award or the criteria for the award. These are new awards, and just as with any challenge to an award under a typical solicitation, there would be some analysis of the solicitation. What's new about the award? Your Honor, the award is going to be a new contract executed under the contractor's GSA Schedule contract. It's got this, let's say, extension or contract, whatever you want to call it. It's basically the same terms, isn't it, of the existing contracts? It is very similar in terms, Your Honor, yes. Is it very similar or is it almost identical or identical? I think it's very similar. As Judge Moore mentioned, these new contracts are – What's the difference? What are the differences? The differences are that the contract is open-ended, and the difference may be that there may be different terms under the new contract, given that the contract – But in a way, even under the existing contracts, those were open-ended too, right, because the contractor is always subject to performance evaluations. I would slightly disagree with that, Your Honor. The terms were not open-ended. They had a set base period of two years and then available option extension – But during that time, the government is reviewing the performance or can review, has a right to review, and has a right to terminate on the basis of that review. Yes, Your Honor. The government always has a right to terminate the contracts with which it engages. It has a termination – So really, that it was open-ended isn't really new. I mean, even under the existing contracts, those were subject to termination. Yes, Your Honor. All contracts are subject to termination. I think we have a completely different contract vehicle, a new contract executed under a GSA Schedule contract. I think it's important to – What's new, though? I mean, you have the same contractors, minus five or four, you have the same contractors doing the same task, collecting on student loan delinquencies. I'm asking you again, what's new? The terms may be different, but the period of the contract is materially different. For instance, Your Honor, if I went around my neighborhood – Is that what you're protesting, that the new contract has a different term? No, Your Honor. We are protesting the department's arbitrary and capricious award of new contracts, which is a substantive right that we have under the Tucker Act. The fact that – Which of your duties changed when the government considered the audit results? Which of our duties changed? Yes. When the government considered the audit results, it took three steps. One, as we're discussing here, is it chose not to award us a new contract. Two, it chose to recall certain accounts under our existing contract. And three, it chose not to place new accounts for the last two months of our last contract. We agree with the government, the interveners, and the court that challenges to those second two actions, which involve performance under the existing contract, the old contract, those are subject to a CDA challenge. No dispute. Those are clearly performance under the old contract. Here, though, the third action is the award of a new contract, which the Tucker Act provides as a substantive right to challenge. Now, let me ask you a couple quick questions because the one thing I didn't understand is when the H-4 says awarding a new task order. So for me, you don't have these cases, bid protest cases, every single day. I wasn't sure, well, what's a task order? I know what an option is. That's what H-1 and H-3 define. And I know what a contract is, like the general schedule contract. But I wasn't sure what a task order is vis-a-vis those two alternatives. And when I looked, the FAR defines a new task order as a contract, doesn't it? Yes, that's right. The FAR expressly defines it that way. And I looked at all of the Court of Federal Claims cases, and they all consistently, I'd say the best one is Data Management Service, say any new task order is a new contract subject to procurement process and law, so to say. Yes, Your Honor. I couldn't find any Court of Federal Claims case that suggested a new task order, if issued, would not amount to a new contract or wouldn't be subject to procurement law. Are you aware of any cases to the contrary? We are aware of no cases to the contrary. But I've found a lot of cases that say every new task order, when issued under a GSA contract, and they're quite specific about that, which is what this is, constitute a new contract and are subject, if they express this way, are subject to procurement law. Now, of course, we're not bound by that large volume of Court of Federal Claims consistent precedence, though, are we? We could go awry and ignore that giant mountain of Court of Federal Claims precedence that says new task orders, whenever issued, are always subject to procurement laws. We could do that if we wanted to, right? Certainly, Your Honor. Okay. Your Honors, I would just repeat that these are new contracts, and the Tucker Act gives us the substantive right to challenge those new contract awards. That is the right we've exercised. I'll reserve my remaining time for questions. Well, no, I want to go back to what I was asking you before, because I was working backwards at it, and that is, as I understand your argument, you're saying the Department violated the Cardinal Change Doctrine. That is not our argument, Your Honor. I believe Appellant Pioneer has raised that argument. Okay, that's Pioneer. Pioneer has raised that argument. Our argument is, surely, these are the award of the new contract. We allege, as our complaint makes clear, and then the complaint in particular, that this is an arbitration. Okay, you've already exceeded your time, so why don't we hear from Mr. Schaffer. Schaffer, how do you say it? Schaffer. That way, Judge Wallach will be able to direct his question. I think you're the proper person for his question. Your Honors, may it please the Court. First, I want to address a point that Judge Moore was making. I really think this case is a lot simpler than the government's trying to have it, and I think this Court is bound. Judge Moore mentioned the cases from the Court of Federal Claims about whether a GSA task order is a contract. I think that's already been answered. I think if you look closely at this Court's decision in CGI Federal, that was a dispute concerning a GSA scheduled task order. And the Court was being asked— Which case was that? CGI Federal, 779 F3D 1346. If you take a close look at that case, every time they talk about the task order, they say the task order is a contract. On page 1348 of the decision, the Court refers to the contract that issue. There was a question whether the protester had standing, and the Court said yes, they have standing, because their economic interests are affected by the award of the contract. And that contract they were talking about was a GSA scheduled task order, just like here. I don't think this Court can find— And I want to be really clear about one thing, because you're speaking very broadly, and I was as well about task orders. I think that there's actually a footnote in the Court of Federal Claims' decision in data management that claims there are certain task orders which are expressly exempted as not contracts, but those are under express statutory provision, and those are different from the one here. And they expressly say these contracts are different from GSA scheduled contracts. And so I just want to be clear so that no one misunderstands. There are certain kinds of task orders, even if new, which wouldn't amount to a contract for which you could bring a bid protest under procurement law. But those are clearly explained and delineated by statute, and they are not this case. This case is the one that falls into the general rule that CFC has consistently held about task orders, correct? Absolutely, Your Honor. There are two kinds of task orders. There are FAR 8.4 task orders, which are GSA scheduled task orders, and that's the type of task order that was addressed in the CGI federal case, and it's the kind of task order we're talking about here. It's a task order under a GSA scheduled contract. Now, you had a pending question for me when you stood up. I apologize, Your Honor. Let me address that directly. We did have a cardinal change argument, but that was really our third or our tertiary alternative argument. Our first argument is the court has jurisdiction because this is a contract, and under the second prong of the top argument. Cardinal change applies when the department materially changes the duties that a contract owes. That's correct, Your Honor, but that's our third alternative argument. What are the duties that materially change? The duty under the evaluation criteria as to how they were going to award the new contract. The H-4 clause is the same thing as a solicitation. Wait a minute. Your duties? The government's duties. The government changed the procedures that apply to the new awards. The government said we're going to evaluate your past performance, and Pioneer had exemplary past performance, and then they were told, but you're still not going to get a contract. They changed the fundamental ground rules. That's really your complaint is that your performance evaluation was not just. Well, it's more than that. It's that our performance evaluation was just. We were exceptional. Our complaint is that they changed the rules. They said we're not going to use that performance evaluation anymore. We're going to use something completely different, and if you look in the appendix, we have Mr. Fraser's declaration under oath about how shocked they were when they found out they were being excluded. Are you challenging the interpretation of the existing terms of the old contracts? Well, we're challenging the way in which the government evaluated the competitors for the 2015 awards, the contract awards. And if a court of law looks at that issue that you're raising, it has to go back and interpret the terms of the existing contracts in order to resolve your problem. It has to look at the terms of the existing contract as part of the evaluation process, the analysis process, but that's often true when you're evaluating for a GSA scheduled task order. You have to look to the master GSA contract, the pre-existing contract. All these task orders, it's very common to have follow-on task orders that come under a single GSA contract, and that's why. I see that there is a lot of confusion, even among cases. We have a term task orders use or contract. So let me ask you a question. Any time that a contract is extended by the terms of the contract, the resulting instrument, is that a new contract or an extension? No. If the contract is extended under the terms of the existing contract under the option clauses, then it's not a new contract at all. It's an option. That's contract administration. So there can be extensions. And what's extended can also be called a new task order, correct? Well, in this case, it is, and that's the sharp distinction. I would say that in almost every case. Just to be clear, under H1 and H3, the options clauses, and when you typically have options clauses in these contracts, those are never issued as new task orders. They're always under the existing task order, and that's what makes H4 so unusual and different. That's right. And if you look closely at Judge Allegra's decision, the trial court's decision, he distinguished between that, just like H4 distinguishes it, and says that's not an option clause. So the option clauses basically extend the existing contract. H4 awards a new contract, and that's a sharp and fundamental difference, and it's in the language of H4. It's very clear. It talks about in addition to the ordering periods stated in Clause B5 and any option terms exercised pursuant to H1, the contractor may earn these additional new contract awards, and those new awards are contracted. Your complaint isn't that new contracts were not awarded, or your complaint also is not that H4 was not applied here. Your complaint is that you weren't chosen. Well, no. Our complaint is that these other companies were chosen instead of us based on terms that were not included in the evaluation criteria. That's a fundamental violation of CICA. The extensions that did occur, there were 17 companies, right? And I believe that 12 of them were extended and five were not. There were 22, and it was reversed. Nine were eligible for new contract awards, and five got new awards, and that's what we're here for. But in this whole process, there never was an exercise of a termination clause of the existing contract, and there never was a new bid protest or a new solicitation for bids. Well, in effect, there was under H4, there is a new solicitation, and these contracts expire. The new awards, the H4 orders cannot be part of the original contract because those contracts expired. They're out of time. It would be fundamentally a violation of law for them to be extended because the six months are gone. All the options are gone. That contract, they're still being wrapped up, closed down work, but the contracts are essentially finished, and there's going to be a new task order, and that's a separate legal instrument, and it's a new contract, and that's what the Tupper Act provides jurisdiction for, a contract award. It can't be part of the old contract. A lot of the arguments that you're discussing with Judge Reyna really go to the merits, which is what you weren't allowed to present below because your case was dismissed at the stage it was dismissed at, right? So what you're not – we don't have to decide that you win or that we even think there's a likelihood that you should win at this stage. We don't have to endorse anything about any of those merits-based arguments. We just have to decide whether you have the right to walk through the door and protest. Yes, and to be very clear, we don't need to reach the cardinal change issue at all. All this court has to do is say that a GSA task order is a contract. Are you abandoning the cardinal change? We're not abandoning it. It's really a third-stage argument. There's no need for this court to get to that issue. Well, need or not, you've left me totally confused, and I want to clarify it. The cardinal change doctrine applies when I'm quoting from AT&T v. Wiltel, applies when the government affects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for, leaving aside that that ends a sentence in a preposition, accepted as finding authority. So my question is, your answer to me seemed to be, will the government change its duties? Will the government change the ground rules so that these other contractors were getting contracts that were beyond the original justification? What are the duties that you have to perform that are materially different? Your duties are still to give accurate information over the phone. Is that correct? Well, that's correct, but the new contractors, really, that's what we're protesting, the new contractors, they're performing a contract that they're receiving under different ground rules. But what are the duties? The duties are that they now have a contract that was awarded under criteria different than what everyone was bidding on, in effect. So the ground rules changed. And I think if you look at the trial court's decision, it talks about changes in the scope or the procedures, and it's the procedures that changed. Okay, Mr. Schaffer, I think we need to move on. Mr. Snyder, you're first. And we've gone way over with the two appellants, so you can use your time, and if you need more, certainly we'll be generous. Yes, Your Honor. I'll try to keep it brief. May it please the Court. Each of the extensions here is an issue of contract administration made in accordance with the explicit terms of the task orders. The Contractor's Subject Act provides the exclusive mechanism to resolve these claims. Therefore, the trial court correctly concluded that it did not possess jurisdiction to assess these claims as bid protests. Each of the contractors agreed in 2009 that education had broad discretion to administer the extensions. The fact that the extensions will take the form of a new task order does not give rise to bid protest jurisdiction in and of itself. You have to look at the substance of the contract and look at the language of the statute. The case from this court, Resource Conservation, explains that in order to be protestable, something has to be in connection with a procurement. That language, in that case, it was found that that language applied to all three so-called prongs of the Tucker Act, including the second prong regarding award of a contract. So the question is, are these extensions in connection with a procurement? And the procurement here occurred in 2009. At that time, under FAR Part 8, there was a request for quotes, there was an evaluation of all the documentation submitted by the various private collection agencies. Four volumes were submitted. It was a best value determination. So a proposing counsel says that these extensions are in connection with the procurement because the ground rules for the initial solicitation were changed. Yes, Your Honor, and that is incorrect. The ground rules here in the initial solicitation that occurred, now we are looking at what is in the task orders, which was, of course, also in that initial solicitation, the language of these task orders. It gave the department broad discretion to administer the extensions. It says that, for example, in Clause H4 and H7, those are the primary clauses that inform this issue, it says that a contractor may earn a performance extension, that there is a threshold performance rating you have to achieve, but even if you achieve that rating, that education will base the decision on a total range of issues completely within education's discretion. Task orders also explain that federal law does apply. The Faraday Collection Practices Act is explicitly referenced in the task orders. And the task orders are also clearly for a transitionary period. It states in Clause H4B that the extensions will coincide with the next round of task orders that are coming up. And so the question is whether these task orders should be treated as the award of a contract for the purposes of the Tucker Act. And Judge Morris, you correctly pointed out that some task orders are barred from Tucker Act jurisdiction by statute. These task orders don't fall under that bar, but the question here is in the FAR. Not only do these task orders not fall under the bar, but every Court of Federal Claims case, and there really are a lot of them, say any time a new task order is issued under GSA schedule contracts, as opposed to those two little exception ones that are delineated by statute, that those are always subject to be processed as impairment laws. I can't find it. I found lots of cases that say that. Every new task order issued under a GSA schedule contract is subject to impairment law. Do you have any disagreement with my understanding of that? Absolutely not, Your Honor. Those cases are not in dispute here because these extension provisions, and a provision that could be in a task order, this could be in a government contract that's not a task order, this extension provision here happens to be in a task order, but the question is… No, it's not just in a task order. The extension provision distinguishes itself from the option in H-4. It uses both words repeatedly, and it says, in addition to any option term, and then it goes on to explain this extension will be in the form of a new task order only if funds are available, only if the contractor accepts whatever term the government provides with regard to pricing and term, and unlike the option, this new task order doesn't have any duration at all. The option terms are 6 months, 60 months. This is going to start, we don't know when, the new task order will start, and we don't know when the new task order will finish. Those are, in fact, as my understanding of contract law, and I'm no contract guru, but the term of a contract is generally viewed as a material term, right? Yes, Your Honor. How long the duration of a contract is a material term. This believes that term opens negotiation between the parties. It does. That, in and of itself, if we look at the definition of the word contract in the FAR, that word contract in the FAR, which is FAR Clause 2.102. You're going to say it's not a contract because it's indexed. No, I'm not, Your Honor. Actually, no. I'm going to say that the term contract in the FAR includes a lot of things, including bilateral modifications. Bilateral modifications typically are not protestable. AT&T, there was a bilateral modification. Oh, absolutely, right? Let's just, isn't it possible that you could have done the same thing you did here through, what do you call them, a task order amendment or a task order modification? I found evidence of both of those in case law. And those, unlike this, are never considered a new task order. Task order amendments and task order modifications are amendments or modifications to the existing task order, correct? Yes, Your Honor. And so your argument, which I probably didn't even let you finish because I knew where you were going, doesn't seem to work in this situation because H-4 doesn't allow for a task order modification or amendment. It says it will be executed in the form of a new task order. You couldn't be clearer. It does say that. I think if you look at the entirety of Clause H-4, H-7, and the surrounding provisions in the contract and look at it as a whole, it is illogical to think that the parties anticipated and reasonably concluded at the time in 2008-2009 when these contracts were competed initially that they intended for this clause to give rise to bid protest jurisdiction. Now, there is no criteria explicitly stated in this clause except for the threshold CPCS score of 85, that you have to have a certain CPCS score in order to be even eligible. But that eligibility isn't enough. It's necessary but not sufficient to get. And the rest of it is very open-ended as to what the Department can consider. That is very different than what you see in whether you have a solicitation and there's terms that have to be applied, that there has to be explicit documentation that shows that the agency applied the terms of the solicitation to the proposals it received. And here, that was done in 2008. So to look at... I spent a lot of time on this case trying to learn about GSA scheduling contracts. I didn't know anything about them before this. And so tell me if I understand the facts right. Basically, in 1990, there was a broad GSA contract that was given. And it was under this broad contract that the Department of Education was allowed to select contractors to whom task orders could be awarded. Is that right? Yes, Your Honor. Okay. And how many people were under that GSA contract? There were 22 private collection agencies. Okay. So we've got a contract, a GSA scheduling contract. And now, the Department of Education, all those 22 have qualified under that contract as eligible, much like the people in this extension qualify as eligible if they meet certain predicate criteria, right? It was a lot more complicated. The eligibility criteria for age 4 is a very simple... Certainly, but we've also dwindled the universe now. Right. The criteria for the 1990 would have been much more complicated, but now we're only talking about 22 people who are generally eligible. And even here, this criteria in age 4, it's only a threshold. I mean, it says may earn. So it still isn't. Unlike for the other clauses that are related to the CPCS scores, age 5 says that if you have a certain score, you will earn a performance fee. You will earn more accounts. Let me finish where I was going. So then in 2009, pursuant to this general scheduling contract, the Department of Education gave task orders to the 22 private collection agencies, right? Now, each of those task orders is a new contract, correct? That is correct, yes. And each of those new task orders would absolutely be subject to big protest laws and the process, like the same process these people want access to now. Generally, that's correct, yes, ma'am. But back then, you would have made, I don't know, RFQs or something. Would there have been something? I mean, this is different. Look, I'm not saying this is, by any means, exactly like the 2009 issuance of the task orders, because back then, wouldn't there have been something the government put out in the solicitation? Exactly. I mean, there was the RFQ, which is in the record. And in the ERS record, I believe it's at page 127. And that's the beginning of it. And in the other record for Pioneer, it's at 1058. That RFQ, the sections L and M of that RFQ, tell you what the four criteria are for the best value determination. There's past performance, technical evaluation, commitment to small business, and I believe price is the last one. Although pricing was, it was, the umbrella contract had a ceiling price, and then the price was lowered by the RFQ and the statement of work. So all of those things were considered, those four factors. There were four volumes submitted by each of the private collection agencies at that time. And so if somebody thought the government had done something squirrelly in awarding those contracts, they hadn't followed their criteria, or their criteria wasn't fair or appropriate, or was there some problem with it, they could have brought a big protest. They could have. And I think here, I mean, the language in the form of a new task order, our view is that you have to look at what— Your view has got to be that's unfortunate. That was unfortunate language. I think that our view is that it doesn't give rise in and of itself to bid protest jurisdiction, just like a bilateral modification, which is defined as a contract in the FAR, doesn't give rise to bid protest jurisdiction unless it should, unless the substance and the context gives rise to bid protest jurisdiction. A bilateral modification in AT&T did not give rise to bid protest jurisdiction because adding work to an existing contract in and of itself, unless there's a cardinal change, doesn't give rise to bid protest jurisdiction. And this court explained in that case what the court considers in determining that. The difference between that and this is really the Grand Canyon because the difference between that and this is that was a modification to an existing contract to add new work. And here, you wrote this. The government generated this contract. And you decided instead to say it had to be a new task order. And the terms are not fully defined, and they're less open to negotiation between the parties, material terms. It makes it—it's a big difference. I understand the bilateral modification. I'm just trying to wrap my head around why I should extend that to this, which feels so different. Well, I guess bilateral modifications are not unilateral, so they require both parties to agree to the terms. So in that sense, the fact that here pricing was an issue, all the parties agreed to the price. In fact, all the protesters want to perform these extensions. There's no question that they're going to accept the price. The price is—to the extent that makes it bilateral, not unilateral, it's not dispositive as to whether it— as I said, bilateral modifications are generally not protestable. So that aspect of bilateral isn't dispositive. So are you saying that we should assume this is bilateral because you know they'll accept the price, whatever price you give them? Is that your argument for why it's bilateral? My argument is simply that it being bilateral in and of itself isn't enough to give rise to bid protest jurisdiction. It has to be in connection with a procurement. And so to be a procurement, this court—in distributed solutions, this court used the definition of procurement as a broad definition, but explained that and cited to the decision of AT&T, also from this court, that there are situations where work is added to a contract that doesn't give rise to a bid protest. And we think this case is much more like AT&T than like distributed solutions. Another case, which is from the trial court, Magnum Opus, is a case where there were a series of contracts, some of which options were extended, some of which options were not extended. And the trial court in that case found bid protest jurisdiction because a price cap had been lifted, and so there was no determinative price. And because of that— You represent the government, right? Yes, Your Honor. Okay. So let me ask you a question. Is there a floodgate problem here? I've never seen—I've seen a lot of government contracts come through my court, and I've seen lots of them include options. I've never seen one that includes this language about an extension that would be subject to a new task order. Is this a provision that is routinely, in your experience, used? Have you seen lots of contracts written this way? I kind of felt like it might be anomalous, and that's why I said before, unfortunate choice of words in the contract, unfortunate drafting. I didn't see this to be a standard. I've never seen this clause before in any contract. Is this a standard clause? Is this a standard thing? My understanding is that there's at least one other agency that has used this clause, perhaps more of the Department of—I think it's the Department of Energy, and that our position in the case is that the court below talked about that the general parameters of bid protest jurisdiction should not be eroded because it can lead to policy implications. That administration of contract matters can become protestable if the court finds that too many things are in connection with the procurement. We feel that this case falls on the side of the line that is not a procurement for all the reasons I've stated, and that while it may be different in some ways than your typical option, for sure it is, that it does erode that line. When this is a contractual mechanism, everyone agreed. Blue and Gold tells us when you agree in a contract to the terms, and we followed the terms in the contract, which are very vague and very broad, but we followed them, and we have cases that you can, under the CDA, which provides you the recourse to attack the decision or challenge it from the government, and even when they have broad discretion, there's an abusive discretion standard applied under the CDA to these types of decisions. So it's not the case that they have no recourse or no ability to seek and challenge and overturn the decision. At this point, they don't, right? They're time-barred from the CDA claim at this point. So they may have been able to bring one, but they wouldn't be able to now, would they? A CDA claim for damages? Now, if they were to bring some sort of CDA claim, I mean, isn't it too late? I assume there's a statute of limitations on those. I don't believe it would be too late. I don't believe it would be too late, Your Honor. Would it be too late for them to follow a claim with the GAO, as one of the defendants did, or one of the plaintiffs did? I believe it would be, Your Honor. And one of them did here, and that case was dismissed because the case is in the trial court. It was dismissed because under statute they had to dismiss it because it was a case before the Court of Federal Claims. Yes, Your Honor. But if there's no case before the Court of Federal Claims or pending here, do they still have recourse to the GAO? I mean, I'm asking you because I don't know. I don't know what the GAO, I mean, the GAO here, Denver, decided whether or not it had jurisdiction. So, I mean, our view is that there is no bid protest jurisdiction for this type of dispute because of the CDA. How operative is the circumstance of the existence of a solicitation or a bid process to the interpretation of the cases that apply to this particular issue? It's not necessary to always have a solicitation to be able to protest. That's clear. There are cases, specifically the outside-the-scope cases, that usually give rise to that type of situation. You can have a pre-solicitation protest. And you can have a pre-solicitation protest as well, yes. And so solicitations aren't necessary. It seems that the Court of Federal Claims based its jurisdiction analysis and decision on whether this involved a bid process or not, and it said the extensions did not involve a bid process. It's all with respect to the administration of the existing contracts. Therefore, we lack jurisdiction. Was the Court of Federal Claims correct in narrowing the issue in that manner? I think the Court of Federal Claims was correct in narrowing the issue in that way. I think there is more to be said about it, but I do think as far as the Court went, it was correct and it was succinct. Now that we've had more time and there's been two rounds of briefing, there's a lot of arguments that have been developed further at this level. But in the end, it still all goes back, essentially, to what the trial court says. The parties all agreed, as the trial court said in the footnote, that this is how these extensions would be administered, and they were administered in accordance with the contract that was agreed to. The mere fact that it said in the form of a new task order to use that as the linchpin for jurisdiction when this is a contractual mechanism. It's not to say that Clause H4 is a solicitation, as I think my counsel said here. We don't agree with that, that Clause H4 is a solicitation. It has none of the indicia of a solicitation. It has no criteria, only a threshold performance rate that isn't even enough. Perhaps that's exactly why they want to protest it. Our view would be they should have protested. You're going to issue a new contract, a new task order, which is by definition a new contract, and you're going to award it without having articulated the precise criteria under which it should be awarded. Maybe that actually goes to the merits of why they want to protest. Perhaps. I think our view is, A, if they wanted to have more criteria, they should have protested the solicitation and added that criteria or sought to add it, A. And B, we know now the facts in the record show, this is at the appendix at pages 2106 to 2115 and 3344, that these are two-year extensions. That was established at the trial court. While that's not a contractual term, the contract doesn't provide a time limit. If you're going to look at whether this was an outside-the-scope modification, the trial court in 18-T explains here, the Federal Circuit explains, that what the trial court should do is look at the type of work, the quantity, and the price, and how much, how drastic was the change. I don't think that we need to go there at this point. I don't think that was one of their stronger arguments, so I don't think you have to probably spend a lot more time because we are way over and we have to give Mr. Farwell a chance. He's got three minutes. Yes, Your Honor. Thank you very much. You've been very helpful. Thank you, Mr. Snyder. Good morning, Your Honor. Jeremy Marwell for the private affilies. Even if you think the award-term extensions here were task orders and that task orders are contracts, there also has to be a procurement under the Tucker Act and that this supports decision and resource conservation. So you can decide this case and affirm the judgment without saying anything at all? Well, you can bring a protest before the procurement. You can do a pre-solicitation, correct? That's right, but there still has to be this court's decision and resource conservation said that that tag at the end of 1491B1 in connection with procurement applies back to prompts 2 and prompts 3. So it can be in connection. What would be one of the definitions of a solicitation? Would it be that the process is opened up to other interests? For example, if this was a new contract and it should be viewed as a solicitation of some kind, would other companies have been able to have competed for the work? Well, so we do know that, and I don't mean to not answer your question, but we do know that adding work within the scope of an existing contract is not a procurement, right? A dictionary definition or the broadest possible reading of the word procurement would sweep in things that this court and the trial court have said are not procurements. Okay, but I'm asking you the absence of other companies being able to compete for the work or not. Does that make a difference? So in the 2008-2009 period, there was a request for quotes. There were submissions of proposals by numerous potential contractors. There was an award. All of those things were associated with issuance of a task order, and I think when you look at all the cases, Judge Moore, from the trial court, those are all cases involving task orders in that context. And so the fact that the parties agreed up front and that the award term extensions were issued within the scope of the H-4 extension and that they were repeatedly called extensions, I mean in all capital letters at the top, award term extension. I might also point out that at Pioneer Appendix 1615, the award term extensions, quote, will be subject to the terms and conditions of the existing task orders. The government, this continues, the government's target prices for the current PCA task orders will apply to the award term extensions. So all of those things are exactly what happened here. With respect to the characteristics of these. I respond to your opponent's argument that the landscape was changed and there was a change that modified the prior, I guess, the 2009 solicitation. The game rules had been changed, and that change affects the prior solicitation, and therefore this does involve a solicitation. We have a new contract. So with respect, I don't think that's a fair reading of the H-4 provision. When you look at the task order as a whole, it says that the award term extension would be issued within the discretion of the department, that the numerical scores would only be a prerequisite, a necessary but not sufficient. The task order repeatedly refers to the exact same federal laws that the Department of Education looked at, the Fair Debt Collection Practices Act, which is what you would expect in a task order involving collection of student loan debt, and that audits could occur. They could be announced or unannounced. And so, I mean, all of those things are exactly what happened here. So I think to say that that was a cardinal change, a material change, is a high bar, and I don't think that the appellants have crossed it. One piece that— Why didn't you mention H-5, which says that the department can determine the adequacy of the contractor's performance on all accounts? Certainly agree. Which is what they're doing. Certainly agree. And with respect to another case, I think it is significant when you are interpreting— But isn't it relatively routine, especially under these GSA contracts, when you're deciding to award a new contract or a new task order to someone to consider their past performance under the other contracts that they've managed? Isn't that almost in every single award part of the criteria that the government uses? So you could characterize, I suppose, it that way, but— Is it yes or no question? Yes? Yes, past performance is a characteristic. Great. So exactly like what they did here, they would look at your performance under your most recent— Like, suppose this was clear. Suppose this wasn't an extension. It wasn't even an award term extension. So this is a clear case where the task order ended and the government issued a new solicitation and said, Okay, we're going to issue a new task order for the same stuff we previously did. Wouldn't it naturally, the criteria for those being considered, part of it would be your performance under the most recent task order, which is otherwise identical? I think that could be the case, but it's also the case that these provisions were set up as incentives to encourage good performance by a contractor who held the task order in the first place. And so I think it's important not to equate a past performance evaluation in the context of a new procurement with the government trying to create incentives within the scope of existing contract administration for high-performing contractors to be able to earn additional money or additional contracts or here may earn performance extensions based on the quality performance during the period. Well, thank you very much, Mr. Marwell. There's a little bit of rebuttal time for appellants. Mr. Sneckenberg, a minute. Your Honors, thank you. I just want to be very clear that this is a question of statutory interpretation and that must start with the text of the Tucker Act. Tucker Act says that a contractor may challenge the award of a new contract. That is it. That is what it says. It does not require a formal solicitation. It does not require any trappings. It does not prohibit a contract from having similar terms to a prior contract. All it says is that you can protest a new contract award. It is undisputed that we have a new contract award here, and that is what we're protesting under the Tucker Act. The government, the interveners, read in additional requirements to the Tucker Act, but that's not what it says. And this Court and the Supreme Court have repeatedly said that when interpreting statutes, you apply the plain meaning of those statutes. Do not read additional requirements into the statutes as the government has you do here. I'd also like to be clear that this was a new contract. This was not an extension. This was not a bilateral modification. It was a new contract. And the fact that it was similar to the old contract, as Judge Moore stated, you can always award a new contract that is essentially identical for the identical services as an old contract. You can always do that. In a GSA task order situation as we have here, that's not surprising at all. All GSA task orders reflect the terms and conditions of the schedule under which they're issued. That's not at all surprising here. This is a new contract. And on the flip side, their position is also that this isn't a Tucker Act case because it's a CDA claim. It's not a CDA claim. The CDA does not apply to challenges to new award decisions. They have not cited a single case where a contractor was allowed to bring a CDA claim to challenge a new contract award. We are not aware of any such case in existence. They have not cited one. We have not found one. You cannot bring a CDA claim to challenge a new contract award. So tell me again, what's the basis of your challenge to the award? Is it that the government did not conduct the performance evaluation correctly or that you were somehow discriminated against, that you had better scores than others and yet you were not selected? The basis of our challenge, Your Honor, is that when the government made a single determination, it looked at a particular audit and said, you did better on this audit, you did worse on this audit. Our challenge is that looking at the results of that audit, the government was arbitrary and capricious in comparing the specific numerical results and using that audit as a way to compare. The numerical results were the number of actionable misrepresentations. On a given audit. And we did not dispute that they could conduct that audit, but the manner in which they relied on that audit and used it to create fine distinguishing between who would get an award and who would not, that was a contract award decision. So the dispute is grounded on the audit? The dispute is grounded on the application of the audit results to determine new contract awards. Why is that not administration of the contract then? There's a case set in our brief. It's an older decision from this court, Coastal Corporation. I think that provides a good example. So in that case, they were not a protest. Let me be clear. The contractor brought a putative CDA claim. The contractor had a formal solicitation. The contractor submitted a proposal. Before any awards were made, the agency canceled the solicitation, said we're not going to make any awards. The contractor attempted to bring a CDA claim to recover bid and proposal costs for competing in that solicitation for the new work. The Energy Board of Contract Appeals, where it was initially brought, considered the case on the merits. And this court vacated and reversed. This court held that there is no CDA jurisdiction to challenge matters that are, quote, preliminary and ancillary to a contract award. That's exactly what we have here. But that involves a bid solicitation. Yes, Your Honor. But the Tucker Act does not distinguish. Tell me where there was a solicitation involved in extending these new contracts. There was no solicitation involved, but that is not required. The Tucker Act is clear that the proposed award or award of a contract gives jurisdiction. And to the extent the intervener – If there was a solicitation, there would be a slam dunk for you, right? Certainly, Your Honor, as Judge Moore said. And the intervener says that there is going to be this in connection with a procurement prong. I would direct your attention to resource conservation and the treatment of that in our briefs. And is it true that our case law says, quote, procurement starts with identification of need for services and includes that? So just the government's identification of services or a need for services is actually enough to meet the procurement part of 1491B1? Yes, Your Honor. And that would be – there would be no solicitation in that situation? Correct, Your Honor. A sole source award – there are many types of ways that a government can make an award that would not involve a solicitation. And a solicitation is not required under the Tucker Act to file a bid protest. With that, if there are no further questions, thank you for your time. Do you have anything you need to add, Mr. Schaffer? Just one point, Your Honor. The court cannot reconcile the trial court's decision below with this court's decision in CGI Federal and this court's decision in Resource Conservation and the plain language of the statute. In CGI Federal, it's clear if you look at the case that GSA orders are contracts. And if you look at Resource Conservation, it's a very broad definition of what is a procurement contract. And these orders here are procurement contracts. And then if you look at the plain language of the Tucker Act, it says – Just out of curiosity, these new task orders, did they ever get issued or are they still on abeyance, still on hold? The new orders were issued. The new task orders were issued. And so if you want to appeal or complain about those, the government says you should take that complaint to the CDA. But my reading of the CDA jurisdiction is that you wouldn't have a jurisdiction to complain about the award of those new task orders. That's correct. We cited cases in our briefs, including the coastal case from this court. But you cannot challenge a contract award at the Boards of Contract Appeals or the Court of Federal Claims under the CDA. You can only challenge a contract award under the Tucker Act bid protest jurisdiction. Given the, let's call it mild confusion in the state of the law on this particular issue, why don't you preserve your right by taking the challenge initially to the contracting officer? Because had they denied you at that point, you still could have – at that point, you would have had jurisdiction at the Court of Federal Claims. Well, I think it's important to remember the Pioneer Credit, we filed a protest at the Government Accountability Office. We saw this as a very routine bid protest. The GAO has down-select jurisdiction. They have jurisdictions over protests, challenging awards of GSA task orders. If you go and look at the GAO cases – Yeah, but that rub was pulled out from under you when this case was filed at the Court of Federal Claims. Understood. But all along – Why didn't you file before the contracting officer? Well, there was no – you mean an agency-level protest? I mean, there isn't really a mechanism that would have had a different result at the agency. We're entitled to get an automatic stay by filing a GAO under the Competition Contracting Act. We were seeking a stay. When they took that away from us, we then went to the Court of Federal Claims under their tough draft bid protest jurisdiction because we're challenging a contract award. Our competitors have five contracts. I mean, it seems like you took a risk in challenging this as a new contract, and you could have taken this initially before the contracting officer under the terms of the contract. But for some reason, you chose not to. I say this only as a conjunction. If you're telling us that you're out of luck because, you know, now you can't go back, and I wonder about that, and I ask you – you brought it up – I ask you, you know, why didn't you go there first? You could have gone there first and won, or you could have lost. If you'd have lost, you definitely would have had jurisdiction before the Court of Federal Claims. I misunderstood your point. The problem is that if we'd gone to the contracting officer under a claim theory, the contracting officer and the court and the Board of Contract Appeals don't have authority to grant us what we want, which is the award of a contract. It's a bid protest. We want a contract award. We don't want to fight with the contracting officer for some sort of money damages or something like that. This is a protest challenging a contract award. We want the injunctive relief that only the court can get. Okay. Well, thank you, Paul, for counsel, for the participation. You all did a great job, and it was very helpful to the court. Thank you.